**BAYONNE SCHOOL BOARD, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF EDUCATION, Defendant.**

**Civ. A. No. 84–3410.**

United States District Court, District of Columbia.

June 3, 1986.

William A. Nelson, Shea and Gould, Washington, D.C., for plaintiff.

Maureen McNair, Dept. of Justice, John Mason (of counsel), Office of General Counsel, Dept. of Educ., Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on the parties' renewed cross-motions for summary judgment.

### I. Background

Plaintiff appeals from the decision of the Secretary of the Department of Education, defendant, denying "impact aid" to the City of Bayonne. "Impact aid" is a federal education subsidy paid to those school districts in which the federal government owns a certain percentage of property.

The Impact Aid Statute, 20 U.S.C. § 237 *et seq.* provides that a local school district can receive impact aid

(a) Where the Secretary, after consultation with any local educational agency and with the appropriate State education agency, determines ...

(1) that the United States owns Federal property in the school district of such local educational agency, and that such property ... (C) had an assessed value (determined as of the time or times when so acquired) aggregating 10 per centum or more of the assessed value of all real property in the school district (similarly determined as of the time or times when such Federal property was so acquired) ...

20 U.S.C. § 237(a)(1)(C).

An administrative law judge (ALJ) rejected plaintiff's application for impact aid in an initial decision dated March 24, 1983. The Secretary upheld the ALJ's denial of impact aid, but rejected the ALJ's finding assessing the value of the Federal property at $11 million.

On July 22, 1985, the court remanded the Secretary's decision for a more extensive explanation of three issues: (1) whether the phrase "all real property" means all real property including the federally-acquired property; (2) the assessed value of the federal-acquired property; (3) whether the assessed value of improvements to the real property was included in the $11 million valuation of the federally-acquired property. Memorandum at 4.

On December 23, 1985, the Secretary issued a new decision which again denied impact aid to plaintiff. Thereupon, the parties filed cross-motions for summary judgment.

### II. Discussion

#### A. The meaning of "all real property"

■ The ALJ and the Secretary concluded in their decision that the term "all real property" in the statute quoted above, meant exactly that: *all* real property in the

district. Thus, in determining whether a school district met the 10% test, defendant divided the assessed value of federal property by the assessed value of all property in the district *including* the federal property. Plaintiff, on the other hand, argues that the value of the federal property should not be included in the denominator of the fraction described above.

In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), the United States Supreme Court set forth a two-pronged analysis for a court reviewing an agency's construction of a statute. "First, always, is the question of whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter: for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." If, however, the "statute is silent or ambiguous with respect to the specific issue, ... the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* The court need not conclude that the agency's construction of the statute "was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id.* 467 U.S. 843 at n. 11, 104 S.Ct. 2782 at n. 11.

While the word "all" in the statute is probably unambiguous, the statute is silent as to whether the agency should or should not include the value of federal property in the value of all property in the district. Thus, the court must consider whether defendant's construction of the statute, which includes the value of the federal property, "is based on a permissible construction of the statute."

The court holds that it is based on a permissible construction. The legislative history of the statute contains apparently contradictory passages which support both defendant's and plaintiff's construction of the statute.

Page 8 of the House Report on the bill, explaining the 10% provision, states:

the aggregate of the federal property acquired had an assessed value (determined at the time of acquisition of each piece of Federal property) equal to 10% or more of the *taxable* real property in the school district. (emphasis added)

Yet, page 27 of the same report states:

and the property ... must have an assessed value, at the time it was acquired, equal to at least 10% of the assessed value at such time of *all taxable real property* in the school district (*including the real property in question*). (emphasis added)

Thus, either interpretation of the statute appears to be reasonable, and the court could uphold the Secretary's construction of the statute on that ground alone. However, the Secretary's explanation for choosing the interpretation he did provides another reason why that interpretation is preferable to plaintiff's.

As the Secretary explained in the revised decision, the language plaintiff quotes from the House Report "simply reflects the fact that in most cases addition would not be required, since the [F]ederal property would have been on the local tax rolls when acquired, and would thus already be included in the total assessed value on those rolls." Secretary's Final Decision at 5. Moreover, the two passages may not be contradictory at all. It is important to note that both speak of "taxable real property". Plaintiff argues that "taxable real property" in the first-quoted passage would not include federal property since that property is not "taxable". Yet, the second-quoted provision also uses the words "taxable real property"; but there, unlike in the first-quoted provision, that phrase is defined to include federally-acquired property. It is entirely possible, therefore, that "taxable real property" in the first provision of the House Report was also intended to include

federally-acquired property although it does not specifically state so.

### B. Defendant's Assessment of the Federally-Acquired Property

■ Although the ALJ had accepted plaintiff's "internal" assessment of the value of the federally-acquired property of $11 million, the Secretary rejected that finding in his initial decision. The court concluded in its earlier opinion that the Secretary's finding lacked sufficient explanation for rejecting the $11 million assessment. As a result of the remand, the Secretary explained his rejection of the $11 million assessment. The Secretary rejected the $11 million figure because it was not taken from any firm written assessment by the City, but rather an appraiser's after-the-fact re-creation of how he believed the City would have valued the land in 1937. The Secretary did so because the statute requires that defendant consider the assessed value at the time the property was acquired, and since formal recorded assessments on the city rolls in 1937 and in 1942, the year the federal government acquired the property, were between $4 and $5 million.

The Secretary's conclusion appears to be supported by substantial evidence. The $11 million figure appears from the record to be, as the Secretary contended, a mere after-the-fact re-creation of the value of the property. It also appears true that the valuation of the property on the city rolls was between $4 and $5 million during 1937–1942. In addition, the condemnation value of the property was a little over $5 million. While condemnation values are not always equivalent to assessment values, there appears to be sufficient justification for the Secretary's conclusion that the property's assessed value was substantially less than $11 million.

It is also important to note that only an assessment of greater than $11 million would result in plaintiff's meeting the 10% test. *See* Final Decision of the Secretary at 7–8. Thus, it was unnecessary for the Secretary to place an exact value on the property; nor is it necessary for this court to do so.

### C. Inclusion of Improvements in the Assessed Valuation

This issue arises because of imprecise wording in one of the footnotes in the ALJ's Initial Decision. That footnote reads:

> Claimant states that the $11,000,000 is the assessed value for the land only. This leaves an inference that the property may have a higher value if improvements were considered. Out of the 714.44 acres, 153 acres were improved from underwater land to uplands upon which the Port Terminal proper was built. The $11,000,000, according to Mr. McGuire's testimony, took into account the increased value of these acres (claimants reply brief page 4, minutes of hearing page 107). In addition, 540 acres were under water when acquired by the federal government (minutes of hearing page 121). 21.11 acres were uplands.

ALJ's Initial Decision at n. 14.

Plaintiff argues that the ALJ's $11 million assessment took into account only the value of improving the land from underwater property to uplands, but did not factor in the value of the Port Terminal and any other *buildings* on the property. The defendant contends that the ALJ did include the value of all improvement in his adoption of the $11 million assessment. First, the Secretary contends that since the ALJ expressly held that the value of all improvements as well as land must be included in determining the assessed value, there was no reason to think that he departed from that holding in the statement in footnote 14. The Secretary also concluded that footnote 14 does not indicate that the ALJ failed to include the value of all improvements, but rather that footnote merely rebutted plaintiff's argument that the $11 million assessment had not included any

improvements including the cost of making some of the underwater acres uplands.

This court need not reach the issue of whether buildings were included in the ALJ's assessment value of the property because the court has held that the Secretary's determination that the value of the property, including any buildings, was greatly less than $11 million, precludes plaintiff from receiving impact aid. However, the court notes that, in any event, the Secretary's reading of the footnote is reasonable and supported by substantial evidence. Again, it is important to note that the condemnation value of the property at the time it was sold to the federal government was a little over $5 million and that that amount would have represented the value of any improvements then existing on the property.

An appropriate Order accompanies this Memorandum.

## JUDGMENT

This matter comes before the court on the parties' renewed cross-motions for summary judgment. For the reasons stated in the accompanying Memorandum, filed this day, it is by the court, this 3rd day of June, 1986,

ORDERED, ADJUDGED and DE-CREED that defendant's motion for summary judgment is granted; and it is further

ORDERED, ADJUDGED and DE-CREED that plaintiff's motion for summary judgment is denied.